UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GAS NATURAL COMERCIALIZADORA, S.A., and NATURGY APROVISIONAMIENTOS, S.A.,<br><br>Petitioners,<br><br>v.<br><br>EDP CLIENTES S.A.U.,<br><br>Respondent. | Civil Action No.: _____ |

## PETITION TO VACATE ARBITRAL AWARD

Pursuant to the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 1-16, including 9 U.S.C. §§ 10, 12, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, June 10, 1958, implemented as Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208. (the "**New York Convention**"), Petitioners Gas Natural Comercializadora, S.A. and Naturgy Aprovisionamientos, S.A. (collectively "**Petitioners**" or "**Naturgy**") petition this Court for an order vacating the Final Arbitration Award dated June 28, 2024 (the "**Award**") and issued by a panel of three arbitrators (the "**Tribunal**") in favor of Respondent EDP Clientes S.A.U. ("**Respondent**" or "**EDP**") in the arbitration proceeding titled *EDP Clientes, S.A.U. v. Gas Natural Comercializadora, S.A., Naturgy Aprovsionamientos, S.A.* (the "**Arbitration**"). The Arbitration was conducted in English, pursuant to arbitration provisions in three contracts between the parties,

and under the United Nations Commission On International Trade Law Arbitration Rules (the "**UNCITRAL Rules**"), and was seated in New York, New York, and thus in this District.[1]

## NATURE OF THE ACTION

1. Naturgy commences this proceeding to vacate the Award issued by the Tribunal in the Arbitration because: (i) the Tribunal manifestly disregarded the applicable law in interpreting the underlying contracts with parol evidence; (ii) the Award was procured through corruption, fraud or undue means because EDP failed to disclose parallel claims brought against a third party, Atlantic LNG 2/3, Company of Trinidad and Tobago Unlimited ("**Atlantic**"), as further explained below; and (iii) the Award violates public policy because it would grant EDP double recovery given the claims that EDP appears to have raised against Atlantic.  A true and accurate copy of the Award is attached hereto as Exhibit 1.

2. As a result of the above, the Award should be vacated.

## PARTIES

3. Petitioner Gas Natural Comercializadora, S.A. is a company organized under the laws of the Kingdom of Spain, with its registered office at Avenida de San Luis, no. 77, 28033 Madrid, Spain.

4. Petitioner Naturgy Aprovisionamientos, S.A. is a company organized under the laws of the Kingdom of Spain, with its registered office at Avenida de San Luis, no. 77, 28033 Madrid, Spain.

---

[1] Consistent with the local practice in this District, Petitioner will submit additional supporting documents, including a memorandum of law, in support of this Petition in accordance with any briefing schedule set by the Court.

5.	Respondent EDP Clientes S.A.U. is a company organized under the laws of the Kingdom of Spain, with its registered office at Plaza Pio Baroja, no. 3,4ª CP 48001 Bilbao, Spain. Respondent is a wholly owned affiliate of Energias de Portugal, S.A.

## JURISDICTION AND VENUE

6.	This Court has subject-matter jurisdiction over this action under 9 U.S.C. § 203, which provides that United States District Courts have original jurisdiction over proceedings falling under the New York Convention.

7.	This proceeding falls under the New York Convention because it is an "arbitral award arising out of a legal relationship" that is considered as "commercial" and is between two parties domiciled in Spain, and thus not "entirely between citizens of the United States." 9 U.S.C. § 202.

8.	This Court has personal jurisdiction over Respondent, and venue is proper here, under 9 U.S.C. § 204 because the Award was "made" in New York, New York, where the arbitration hearing was held and where Respondent consented to arbitrate. Additionally, the Arbitration was governed by New York law. Accordingly, Respondent consented to this Court exercising personal jurisdiction over it in a proceeding to vacate the Award. Independently, Respondent purposefully availed itself of this forum by arbitrating a dispute seated in New York and thereby submitted itself to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### A.	Factual Background

9.	On June 5, 2013 Naturgy and EDP entered into a liquified natural gas (LNG) or gas swap transaction with three interrelated contracts—two contracts that governed the "legs" of the swap (*i.e.* the agreements to sell LNG or gas from EDP to Naturgy, on the one hand, and from

3

Naturgy to EDP on the other) and a framework agreement.  These contracts followed from earlier, similar agreements dated April 30, 2009.

10. The LNG Sales and Purchase Extension Agreement (the "**Trinidad LNG SPEA**") governed the Trinidad leg of the Swap.  It provided that EDP transferred to Naturgy all of its rights under EDP's contract to purchase free destination LNG from Atlantic (the "**Atlantic Contract**") in Trinidad (except for those with respect to price).  A true and accurate copy of the Trinidad LNG SPEA is attached hereto as Exhibit 2.

11. As a result, Article 2.9 of the Trinidad LNG SPEA required EDP to "at all times diligently enforce its rights (including specifically, but not limited to, its 'free destination' rights, receiving the [Annual Contract Quantity] and enforcing its rights to damages) under the Atlantic Contract."

12. In addition, the Trinidad LNG SPEA provided in Article 18.5(e) that "[i]n the event [EDP] obtains additional damages, credits or payments from Atlantic" as a result of shortfalls in deliveries from Atlantic to EDP, "[EDP] shall credit or pay such damages, credits or payments to [Naturgy]."  The full provision reads as below:

> **18.5(e)** Subject to sub-Article 18.5(f) and notwithstanding the provisions of Sub-Articles (b) and (d) above and in recognition that [EDP]'s ability to perform this Contract is dependent on Atlantic, against whom [EDP] must seek recourse far any Shortfall Quantity:
>
> **(i)** [EDP]'s liability to [Naturgy] under this Article 18.5(e) shall at no time exceed the liability for such a quantity of Shortfall Gas owed by Atlantic to [EDP]; and
>
> **(ii)** In the event [EDP] obtains additional damages, credits or payments from Atlantic in respect of such Shortfall Quantity event, [EDP] shall credit or pay such damages, credits or payments to [Naturgy]; and
>
> **(iii)** Any payment or credit in respect of such a quantity of Shortfall Gas shall only be applied once [EDP] has recovered credit or payment from Atlantic.

13. The Contrato de Aprovisionamiento de Gas Natural (the "**Bilbao LNG SPEA**") governed the Bilbao leg of the swap. It required Naturgy to deliver a corresponding quantity of LNG or gas to EDP at specific points on the Iberian Peninsula. A true and accurate copy of the Bilbao LNG SPEA, including a certified translation from the original Spanish into English, is attached hereto as Exhibit 3.

14. Both the Trinidad LNG SPEA and Bilbao LNG SPEA were subject to the provisions of the LNG Swap Framework Extension Agreement (the "**SFEA**" and collectively with the Trinidad LNG SPEA and Bilbao LNG SPEA, the "**Transaction Extension Documents**" or the "**Contracts**"), a document that, according to its Article 2.1, contained "detailed provisions" to "maintain and rule the swap balance in both SPEA(s) concerning price paid for quantities and volume delivered thereto." In the event of any conflict between the agreements, the provisions of the SFEA were to prevail according to its Article 2.2. A true and accurate copy of the SFEA is attached hereto as Exhibit 4.

15. Amongst the SFEA's balancing rules were those found in Articles 5.1 and 5.2, which provided in relevant part that where, on the Trinidad leg, "monthly quantities effectively delivered […] do not match the monthly quantities previously scheduled in the [Annual Delivery Programme (the 'ADP')]" due to "[d]ifferences between the volumes of LNG programmed in the ADP under the Trinidad LNG SPEA and the volumes of LNG effectively delivered at the Trinidad Export Facilities (provided that the size of the LNG Tanker that lifts the volumes is the same to the size of the LNG Tanker programmed in the ADP)," then under Article 5.2 the "parties shall make [] reasonable endeavours to deliver and to take under the Bilbao LNG SPEA equivalent quantities to those effectively which have been delivered and taken under the Trinidad LNG SPEA." Articles 5.1, 5.1.2, and 5.2 read as below:

>**5.1** Should be the case that monthly quantities effectively delivered under the Trinidad LNG SPEA do not match the monthly quantities previously scheduled in the ADP under the Trinidad LNG SPEA due to the following causes:
>
>…
>
>>**5.1.2** Differences between the volumes of LNG programmed in the ADP under the Trinidad LNG SPEA and the volumes of LNG effectively delivered at the Trinidad Export Facilities (provided that the size of the LNG Tanker that lifts the volume is the same [sic] to the size of the LNG Tanker programmed in the ADP).
>
>**5.2** The parties shall make its [sic] reasonable endeavours to deliver and to take under the Bilbao LNG SPEA equivalent quantities to those effectively which have been delivered and taken under the Trinidad LNG SPEA adjusted accordingly by a factor of 38,000,000/39,000,000 and, if needed, multiplied by [1-% Regasification discharge losses] and/or [1-% Transportation losses].

16. Beginning in June 2021, Atlantic curtailed its LNG deliveries to EDP under the Atlantic Contract, and thus EDP curtailed its LNG deliveries to Naturgy under the Trinidad LNG SPEA. Correspondingly, and in response, Naturgy curtailed its LNG deliveries to EDP under the Bilbao LNG SPEA pursuant to the balancing provision of SFEA Article 5.1.2.

17. EDP, however, claimed that Naturgy had no right to reduce its deliveries to EDP under the Bilbao LNG SPEA by a corresponding amount. It claimed that SFEA Article 5.1.2 only applied to small differences arising from logistical delivery issues, rather than to larger curtailments of the kind EDP had implemented. As a result of Naturgy's corresponding curtailment, EDP sought to purchase replacement gas on the spot market (including from Naturgy) and raised invoices to Naturgy for the costs it incurred to purchase such gas. EDP also refused to pay to Naturgy certain amounts that, it did not deny, were owed to Naturgy.

18. These disputes between the parties led to the eventual termination of the Transaction Extension Documents and the commencement of an arbitration between the Parties.

**B.   The Arbitration and Award**

19. Each of the Transaction Extension Documents contained arbitration clauses requiring that any dispute arising out of the Transaction Extension Documents be settled by arbitration in accordance with the UNCITRAL Arbitration Rules with the seat of arbitration in New York, New York. *See* SFEA Art. 16; Trinidad LNG SPEA Art. 17; Bilbao LNG SPEA Art. 14. The SFEA and Trinidad LNG SPEA provided that any dispute arising out of those agreements was to be governed under New York substantive law. *See* SFEA Art. 15; Trinidad LNG SPEA Art. 16. The Bilbao LNG SPEA provided that any dispute arising out of the Bilbao LNG SPEA was to be governed under Spanish law. *See* Bilbao LNG SPEA Art. 13.

20. EDP initiated an arbitration proceeding against Naturgy pursuant to the arbitration clauses contained in the SFEA, Trinidad LNG SPEA, and the Bilbao LNG SPEA on November 24, 2021. A true and accurate copy of the Notice of Arbitration is attached hereto as <u>Exhibit 5</u>.

21. EDP claimed that Naturgy's curtailment of deliveries under the Bilbao LNG SPEA was a breach of that agreement, and of the Transaction Extension Documents more generally, and sought damages for the cost of replacing the gas or LNG not delivered under the Bilbao LNG SPEA for a total amount of approximately USD 478,000,000 excluding interest, corresponding to approximately USD 204,300,000 plus interest before termination, and approximately USD 273,700,000 plus interest after termination until the contractually agreed conclusion of the Transaction Extension Documents on September 30, 2023. Award ¶ 325. Naturgy argued that the Transaction Extension Documents required Naturgy to reduce volumes on the Bilbao leg as a result of EDP's curtailments. It counterclaimed for approximately USD 58.6 million plus interest in unpaid amounts that, EDP did not deny, were due to Naturgy, but that it had refused to pay. *Id.* ¶¶ 285-286, 300, 319.

22. Accordingly, the principal issue in the Arbitration was whether SFEA Article 5.1.2 applied in the event of *any* differences on the Trinidad leg between programmed and delivered volumes, *including* those arising from curtailments (Naturgy's position), or whether Article 5.1.2 *only* applied to differences due to logistical delivery issues on the Trinidad leg (EDP's position). If Article 5.1.2 applied to any differences, as Naturgy asserted, then Naturgy would be required to reduce volumes on the Bilbao leg under Article 5.2 of the SFEA to match those delivered under the Trinidad leg.

23. Following multiple rounds of written briefing, as well as an oral hearing in New York, New York on October 16-18, 2023, *id.* ¶ 27, the Tribunal issued the Award on June 28, 2024.

24. In the Award, the Tribunal adopted EDP's position and found that the parties intended for Article 5.1.2 to apply only to differences in volumes that arose from logistical delivery issues, even though the provision itself does not say this. In practice, this meant that Article 5.1.2 could be used to balance small volumes but not large volumes. In effect, the Tribunal read into Article 5.1.2 a limitation that is clearly not present on the express terms of that provision.

25. In making this finding, the Tribunal relied on the "factual context of the Swap Transaction and, more particularly, the deliveries of LNG in Trinidad under the [Trinidad LNG SPEA]" in order to "give [Article 5.1.2 and other provisions] meaning and to give effect to their general purpose." *Id.* ¶¶ 182, 79. It looked, in particular, to what it said were differences in the "practical or operational aspects of the loading process[es]" between the Trinidad leg and the Bilbao leg and concluded that "[Article] 5.1.2 in its context indicates that it was intended to address differences in volumes arising from the loading of LNG tankers at the Trinidad Export Facilities or similar issues." *Id.* ¶ 187. The Tribunal, however, concluded (rightly) that there could be no

8

recourse to extrinsic evidence (like the "context of the Swap Transaction") under New York law (the law applicable to the SFEA) because (i) under New York law "[e]xtrinsic evidence is only admissible where the relevant language of the agreement in question is ambiguous," *id.* ¶ 175, and (ii) that there was no "ambiguity which would require it to have recourse to the extrinsic evidence." Award ¶ 251.

26. On this basis, the Tribunal found that Article 18.5 of the Trinidad LNG SPEA applied "in its entirety to any failure by EDP to deliver LNG" to Naturgy on the Trinidad leg, and thus was Naturgy's exclusive remedy for EDP's reduction in LNG deliveries. *Id.* ¶¶ 200-201, 211-13. In so doing, it found that the liquidated damages paid to EDP by Atlantic under the Atlantic Contract and passed on to Naturgy under Article 18.5(e) of the Trinidad LNG SPEA balanced "the failure to deliver by EDP due to Atlantic's own failure to deliver under the Atlantic Contract," *id.* ¶ 216, ignoring that the balancing rules of the swap were meant to be included in the SFEA, not the individual "legs" (*i.e.*, the Trinidad LNG SPEA and Bilbao LNG SPEA). According to the Tribunal, "it is unlikely that the Parties intended to create a second, inconsistent regime for addressing failures to deliver by EDP due to curtailments by Atlantic" (*i.e.* under Article 5 of the SFEA). *Id.* ¶ 218.

27. As a result, the Tribunal found that Naturgy had breached its obligations under the Transaction Extension Documents by reducing volumes of LNG delivered to EDP and ordered Naturgy to pay EDP pre-termination damages of USD 195,100,000 plus interest as well as costs of USD 1,676,365.65 and EUR 997,202.12 plus interest, corresponding to 40% of EDP's claimed costs. *Id.* ¶ 421.

    **C.**    **EDP's Arbitration Against Atlantic**

28. On information and belief, at some point following Atlantic's curtailment of LNG deliveries to EDP, EDP initiated an arbitration against Atlantic seeking damages under the Atlantic Contract for Atlantic's curtailment of LNG deliveries.

29. EDP *did not* inform Naturgy of this separate arbitration against Atlantic during the Arbitration between EDP and Naturgy even though prospective damages from Atlantic were a critical issue in the arbitration between EDP and Naturgy. Whilst EDP conceded that it owed amounts to Naturgy under Article 18.5(e) of the Trinidad LNG SPEA, it did not disclose the claims that it had raised for such amounts in its parallel arbitration with Atlantic. As EDP argued, and the Tribunal concluded, these damages were Naturgy's exclusive remedy for EDP's LNG curtailments under Article 18.5(e) of the Trinidad LNG SPEA. At the very least, they should have been taken into account in the assessment of damages in the Arbitration.

30. Moreover, Naturgy has an ongoing interest in understanding, and right to be apprised of, EDP's claims against Atlantic under the Atlantic Contract given (i) EDP's obligation to "at all times diligently enforce its rights (including specifically, but not limited to […] enforcing its rights to damages) under the Atlantic Contract," per Article 2.9 of the Trinidad LNG SPEA and (ii) Naturgy's rights to any damages from that arbitration under Article 18.5(e) of the Trinidad LNG SPEA.

31. Despite specific and pointed questions in subsequent correspondence, EDP has refused to provide any further information in relation to its claims or arbitration against Atlantic. Naturgy first raised the issue in a letter sent to EDP on July 18, 2024. A true and accurate copy of a letter sent by Naturgy to EDP on July 18, 2024 is attached hereto as Exhibit 6.

32. In the July 18, 2024 letter, Naturgy posed three questions to EDP's counsel:

In order to determine whether any additional amounts are due, or may be due, by EDP pursuant to Article 18.5(e) and/or whether EDP is enforcing its rights (including its right

to such damages) pursuant to Article 2.9(a), we request that EDP confirm by no later than 25 July 2024:

> 1. whether EDP has raised or discussed any claims against Atlantic for "*additional damages, credits or payments* […] *in respect of* [a] *Shortfall Quantity*", including, but not limited to, in settlement discussions or consultations prior to arbitration, beyond any damages, credits or payments that EDP has already credited or paid to Naturgy;
>
> 2. whether EDP is currently seeking, or has sought in the past, to enforce rights to any "*additional damages, credits or payments* […] *in respect of* [a] *Shortfall Quantity*" beyond any damages, credits or payments that EDP has already credited or paid to Naturgy; and
>
> 3. whether EDP has received any "*additional damages, credits or payments* […] *in respect of* [a] *Shortfall Quantity*" beyond any damages, credits or payments that EDP has already credited or paid to Naturgy.

33. On July 28, 2024, EDP sent a letter in reply to Naturgy's July 18, 2024 letter. A true and accurate copy of the letter sent by EDP to Naturgy on July 28, 2024 is attached hereto as Exhibit 7.

34. In the July 28, 2024 letter, EDP's counsel provided an evasive, non-responsive reply that "EDP has always complied with the Trinidad LNG SPEA." EDP further "confirm[ed] again that it has not received any 'additional damages, credits or payments […] in respect of [a] Shortfall Quantity' beyond any damages, credits or payments that EDP has already credited or paid to Naturgy." It did not, however, deny that EDP had raised claims against Atlantic, nor that it was pursuing those claims in a parallel arbitration.

35. On July 30, 2024 Naturgy sent a letter in reply to EDP's July 28, 2024 letter. A true and accurate copy of the letter sent by Naturgy to EDP on July 30, 2024 is attached hereto as Exhibit 8.

36. In the July 30, 2024 letter, Naturgy followed up to ask (again) whether "EDP has enforced or is enforcing any right under the Atlantic Contract to damages beyond any damages,

11

credits or payments already credited or paid to Naturgy." Naturgy repeated questions "1" and "2" as contained in its July 18, 2024 letter, requesting that EDP give "a complete answer" as "no answer was provided" in EDP's July 28, 2024 letter.

37. On August 5, 2024, after receiving no reply from EDP, Naturgy repeated these same questions. A true and accurate copy of the letter sent by Naturgy to EDP on August 5, 2024 is attached hereto as Exhibit 9.

38. EDP finally provided a response on August 23, 2024. A true and accurate copy of the letter sent by EDP to Naturgy on August 23, 2024 is attached hereto as Exhibit 10.

39. In the August 23, 2024 letter, EDP "reiterate[d] that it has always complied with the Trinidad LNG SPEA and that it has not received any 'additional damages, credits or payments […] in respect of [a] Shortfall Quantity' beyond any damages, credits or payments that EDP has already credited or paid to Naturgy." EDP concluded this letter with the assertion that "[t]here is therefore no further information to be shared with Naturgy," notwithstanding EDP's interest in, and right to receive, such information pursuant to the Trinidad LNG SPEA.

40. On August 30, 2024, Naturgy sent a letter in reply to EDP's August 23, 2024 letter. A true and accurate copy of the letter sent by Naturgy to EDP on August 30, 2024 is attached hereto as Exhibit 11.

41. In its August 30, 2024 letter, Naturgy once again requested that EDP answer questions "1" and "2" as contained in its July 18, 2024 letter, and further requested that EDP provide "the specific dates on which [it] has taken such steps and actions."

42. Naturgy sent an additional follow up email on September 23, 2024 requesting a response to its letter. A true and accurate copy of the email sent by Naturgy to EDP on September 23, 2024 is attached hereto as Exhibit 12.

43.     On September 24, 2024, after nearly a month of silence, EDP finally replied. A true and accurate copy of the letter sent by EDP to Naturgy on September 23, 2024 is attached hereto as <u>Exhibit 13</u>.

44.     In the September 24, 2024 letter, using language nearly identical to that in its previous letters, EDP repeated its claim that it had not received any "additional damages, credits or payments" before stating that there "is no additional information to be provided in response to [Naturgy's] inquiries."

45.     Absent provision of information from EDP regarding this arbitration, Naturgy cannot know whether EDP is "diligently enforce[ing] its rights" to damages under the Atlantic Contract as required by Article 2.9 of the Trinidad LNG SPEA, nor whether it is likely to receive (or has received) such damages, which it must pass on to Naturgy pursuant to Article 18.5 of the Trinidad LNG SPEA.  This state of affairs—in which Naturgy is left to blindly trust EDP's representations—is particularly disturbing as any such damages should have been accounted for in the Award but were not because EDP concealed its parallel arbitration against Atlantic and still refuses to provide any details thereof.

## **GROUNDS FOR VACATING THE AWARD**

46.     As will be further explained in Petitioners' forthcoming Memorandum of Law, Petitioners seek to vacate the Award under three separate grounds: (i) because the Award constitutes manifest disregard of the law; (ii) because the Award was procured by corruption, fraud, or undue means; and (iii) because the Award violates public policy.

### A.      **Manifest Disregard of the Law**

47.     Petitioners incorporate all previous paragraphs as if fully set forth herein.

48.     An award falling under the New York Convention and rendered in the United States may be vacated where the award constitutes "manifest disregard of the law." *See Yusuf Ahmed*

*Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 21, 23 (2d Cir. 1997) (noting that manifest disregard of the law is an "implied grounds for vacatur" under the FAA); *see also Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451–52 (2d Cir. 2011) (explaining that manifest disregard of law is a "judicial gloss" on the statutory grounds enumerated under the FAA).

49. For an arbitral award to be vacated on this basis, a petitioner must show that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (cleaned up).

50. Here, the Tribunal's total disregard of New York's parol evidence rule was so egregious that it amounts to a manifest disregard of the law. Specifically, the Tribunal determined that the Transaction Extension Documents—and particularly, Article 5.1.2 of the SFEA—were unambiguous and therefore could not be interpreted with the aid of extrinsic evidence under New York's parol evidence rule, but then proceeded to analyze the relevant provisions with reference to "context" and certain extrinsic evidence.

51. New York law concerning the application of parol evidence to the interpretation of a contractual provisions is well defined, explicit, and clearly applicable to the Tribunal's resolution of EDP's breach of contract claim in the Award. Both Naturgy and EDP set forth the well-defined applicable legal standard for the application of extrinsic or parol evidence to a contract under New York law—*i.e.*, that it should only be applied where the relevant provisions are ambiguous, *see Donohue v. Cuomo*, 38 N.Y.3d 1, 12-13 (2022)—in substantively identical terms, which the Tribunal not only acknowledged, *see* Award ¶ 67, 80, but also incorporated in its own analysis. *See id.* ¶ 175.

14

52. The Tribunal confirmed that "[e]xtrinsic evidence… is not admissible except where the relevant language of the agreement is ambiguous" and concluded there was no "ambiguity which would require it to have recourse to [] extrinsic evidence." *Id.* ¶¶ 80, 251. Nonetheless, the Tribunal relied upon the "factual context of the Swap Transaction and, more particularly, the deliveries of LNG in Trinidad" to interpret SFEA Article 5.1.2. *Id.* ¶ 182; *see also* ¶ 187.

53. As the Tribunal rightly pointed out, "Naturgy's defence depend[ed] on the interpretation of SFEA [Article] 5 and, in particular, [Article] 5.1.2," *id.* ¶ 180, but the resort to external evidence led it to conclude that SFEA Article 5 "did not apply" to differences in quantities delivered due to curtailments (rather than logistical delivery issues). *Id.* ¶ 250. The Tribunal's finding that Article 5.1.2 only applied to differences due to logistical delivery issues on the Trinidad leg, and did not encompass differences resulting from curtailments, meant that Naturgy could not correspondingly reduce volumes on the Bilbao leg under Article 5.2. There is no colorable justification for this finding, which was based entirely on the Tribunal's manifest disregard of New York law barring the use of parol evidence where the terms of a contract are unambiguous.

54. Accordingly, the Award should be vacated in its entirety because the Tribunal knew and cited to governing New York law concerning parol evidence but ignored the law and refused to apply it altogether by relying on improper extrinsic evidence to interpret the contracts.

    **B.**    **Award Procured Through Corruption, Fraud, or Undue Means**

55. Petitioners incorporate all previous paragraphs as if fully set forth herein.

56. Pursuant to Section 10(1) of the FAA, 9 U.S.C. § 10(a)(1), "the United States court in and for the district wherein the award was made may make an order vacating the award upon

the application of any party to the arbitration – (1) where the award was procured by corruption, fraud, or undue means."

57. EDP's decision to conceal the arbitration against Atlantic, not to mention its stonewalling when subsequently questioned about the details of the proceeding, raises grave concerns.

58. First, EDP's failure to disclose its parallel arbitration against Atlantic prejudiced—by fraud or undue means—Naturgy's due process rights.  Among other things, Naturgy was unable to apply to the Tribunal to consolidate the two arbitrations, which could have been done with the agreement of the parties.

59. Second, given EDP's ongoing obfuscation and evasions, Naturgy cannot determine whether EDP has taken any legal or factual positions in the arbitration against Atlantic that would be inconsistent with those EDP advanced in the arbitration at issue in this action.  This raises a further specter of fraud and undue means as it relates to the arbitration between EDP and Naturgy, including because EDP may have withheld material evidence, been estopped from taking a legal factual position in one of the two arbitrations, or claimed less damages in the Atlantic arbitration then they sought and or received from Naturgy.

60. Third, EDP's failure to disclose its parallel arbitration against Atlantic in the Arbitration may have led to an award that failed to account for any amounts that EDP may have been seeking or recovered from Atlantic, and thereby distorted EDP's damages claim by fraud or undue means.  Under Article 18.5(e) of the Trinidad LNG SPEA, EDP is required to pass on any damages recovered from Atlantic as a result of Atlantic's curtailment to Naturgy.  Accordingly, the parties submitted their damages claims without a record that fully accounts for Naturgy's rights to potential setoff pursuant to the exclusive remedies of Article 18.5(e).  Moreover, given EDP's

evasiveness when questioned on its claims and arbitration against Atlantic, Naturgy cannot grant full credence to EDP's unsupported assertion that it has not received any damages from Atlantic that it is obligated to pass along to Naturgy.

### C. Award Violates Public Policy by Granting EDP Double Recovery

61. Petitioners incorporate all previous paragraphs as if fully set forth herein.

62. Pursuant to Article V(2)(b) of the New York Convention, an arbitral award may be vacated if "recognition or enforcement of the award would be contrary to the public policy of [the] country [in which that relief is sought]." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009).

63. Allowing EDP double recovery—both from Naturgy through the Award, and from Atlantic in the undisclosed parallel arbitration—would be in contravention of "well-defined … common law of [New York]." *Waehner v. Frost*, 770 N.Y.S.2d 596, 598 (Sup. Ct. 2003). Double recovery is prohibited both in New York state courts, *See Berg-Bakis Ltd. v. City of Yonkers*, 455 N.Y.S.2d 645, 646 (1982), and under controlling federal precedent. *See, e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002); *United States v. Nucci*, 364 F.3d 419, 423 (2d Cir. 2004); *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 880 F.2d 642, 649 (2d Cir. 1989).

### **DISCOVERY IS WARRANTED**

64. The withheld evidence discussed above is sufficient to warrant granting Naturgy's petition to vacate the Award under both 9 U.S.C. § 10(a)(1) and the New York Convention's public policy exception, but targeted discovery should be permitted regarding EDP's undue means and fraud to ensure the Court has a complete record before it resolves the parties' arguments on the merits.

65. "[D]iscovery in a post-arbitration judicial proceeding to confirm or vacate is governed by the Federal Rules of Civil Procedure, but is available only in limited circumstances,

where relevant and necessary to the determination of an issue raised by such an application." *Frere v. Orthofix, Inc.*, 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000) (collecting cases). "[T]he court must weigh the asserted need for hitherto undisclosed information and assess the impact of granting such discovery on the arbitral process. The inquiry is an entirely practical one, and is necessarily keyed to the specific issues raised by the party challenging the award and the degree to which those issues implicate factual questions that cannot be reliably resolved without some further disclosure." *Id.* at *5 (citation omitted). "[W]hen the requested discovery relates to allegations of fraud, as is the case here, a district court should only entertain a movant's request if the alleged fraud was not discoverable during the arbitration itself." *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 261 (D.D.C. 2013) (citations omitted). These requirements are met.

66. Federal courts permit limited discovery in connection with motions to vacate or confirm arbitral awards in precisely these circumstances, where the Award was potentially "procured by fraud undue means." *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331 (LJL), ECF No. 162 at 47 (S.D.N.Y. Sept. 6, 2024) (permitting limited discovery to support party's petition to vacate award); *see also Frere*, 2000 WL 1789641, at *7-8 (permitting limited discovery as to "information that [is] crucial to the resolution of the vacatur motion and not yet available to the petitioners," as to which the court discerned "need … so self-evident as to justify honoring" the discovery request).

67. EDP's refusal to disclose its arbitration with Atlantic, when that information was material to Naturgy's rights and remedies under the Transaction Extension Documents, compels limited discovery here. In particular, discovery into the parallel arbitration against Atlantic will support Naturgy's petition and underscore that vacatur is warranted for the reasons pleaded above.

Further, discovery could reveal that EDP improperly withheld other evidence during the arbitration.

68. Thus, to permit the Court to resolve the issues raised here on a complete record, the Court should allow Naturgy to conduct targeted discovery regarding EDP's fraud, undue means, and intentional efforts to conceal the arbitration brought against Atlantic, the damages recovered as a result of that arbitration, and any potentially inconsistent positions taken therein.

## **PRAYER FOR RELIEF**

WHEREFORE Petitioners prays that this Honorable Court enter an Order that:

A. Vacates the Award;

B. Orders targeted discovery related to the issues raised in this petition, including with respect to EDP's undisclosed arbitration against Atlantic;

C. Grants such other and further relief as the Court shall deem just and proper.

| | |
|---|---|
| DATED: New York, New York<br>September 27, 2024 | **QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP**<br><br>By: */s/ Gregg Badichek*<br>Gregg Badichek<br>1300 I Street NW, Suite 900<br>Washington, D.C. 20005<br>Tel: +1 202 538 8000<br>Fax: +1 202 538 8100<br>greggbadichek@quinnemanuel.com<br><br>Alexander Leventhal<br>(*admission forthcoming*)<br>6 rue Lamennais<br>75008 Paris<br>France<br>Tel: +33 1 73 44 60 00<br>Fax: +33 1 73 44 61 00<br>alexanderleventhal@quinnemanuel.com<br><br>Mark McNeill<br>Charles F. Rice<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Tel: +1 212-849-7000<br>Fax: +1 212-849-7100<br>markmcneill@quinnemanuel.com<br>charlesrice@quinnemanuel.com<br><br>*Attorneys for Petitioners* |